379 So.2d 795 (1979)
Robert D. ANDERSON
v.
Alma Ida Geer, wife of Robert D. ANDERSON.
No. 10539.
Court of Appeal of Louisiana, Fourth Circuit.
December 11, 1979.
Rehearing Denied February 20, 1980.
Margaret M. Gonzalez, Carolyn N. Hazard, New Orleans, for defendant-appellee.
Trudy H. Oppenheim, New Orleans, for plaintiff-appellant.
Before SAMUEL, SCHOTT and CHEHARDY, JJ.
SCHOTT, Judge.
Plaintiff, Robert D. Anderson has sued his wife, Alma Geer Anderson, for a separation from bed and board on account of her habitual intemperance. Defendant reconvened for a judgment of separation from bed and board based on abandonment by plaintiff. From a judgment in favor of defendant, granting her a judgment of separation and dismissing plaintiff's petition, he has appealed. The issues are whether the facts entitle plaintiff to a separation against his wife as a matter of law, and if not, is he necessarily vulnerable to a judgment in favor of his wife under the law and the facts of the case.
In dismissing plaintiff's suit for separation the trial judge stated that "Mrs. Anderson's habitual intemperance is excused by her combined (and probably related) illnesses of alcoholism and schizophrenia. All of the expert testimony, and the two hospital records, compel this conclusion." The record supports this finding. Early in March, 1973, defendant saw Dr. Richard M. Dawes, a psychiatrist, for treatment. Her condition prompted Dr. Dawes to admit her to De Paul Hospital on March 4, 1973. Shortly after her admission a psychological consultation revealed latent type schizophrenia with paranoid features. After *796 she showed a low response to psychotherapy and medication she was given eleven electroconvulsive or shock treatments which resulted in an improvement of her depressive symptoms. She was discharged on May 1, 1973, and was continued on psychotherapy and medications under the care of Dr. Dawes. On August 14 he diagnosed her condition to be psychotic depressive reaction and possible schizophrenia. Although there was evidence that defendant drank considerably prior to her hospitalization, plaintiff's testimony does not suggest that it was a real problem at that time. Similarly, following this hospitalization defendant was drinking considerably but it was apparently not to the extent that made plaintiff's living with defendant insupportable. Things continued to be relatively normal in the family until January, 1974, when defendant made a suicide "gesture" which precipitated a second hospitalization of approximately one month's duration. At this time plaintiff became deeply involved in a program of psychotherapy for defendant in cooperation with Dr. Dawes and following his recommendation plaintiff began to live more closely with defendant and to spend all of his time with her. This continued until the summer of 1974, when he found that this course of conduct was conflicting with his duties to his children and to his job, so that he withdrew somewhat from this closeness to defendant, whereupon she appeared to feel rejected, became withdrawn and began to drink continuously. Over the next three years plaintiff's life was quite miserable as he tried to carry the entire burden of running his household and defendant did little more than prepare the meals, drink and pass out on a daily basis. Finally, with the deterioration of her family relationship she was admitted to De Paul Hospital on November 14, 1977, for further treatment. Following a course of drug therapy she became less depressed and was discharged on December 15. The final diagnosis was schizo-affective schizophrenia, depressed type and chronic alcoholism.
It would be an over simplification to say that defendant was guilty of habitual intemperance simply because she was an alcoholic and that she was therefore at fault under LSA-C.C. Art. 138(3) because she did not have or did not exercise the will power to stop drinking. Without attempting to detail the testimony of Dr. Dawes and another psychiatrist, Dr. Escalada, who examined defendant shortly before the trial in September, 1978, it seems clear that her drinking was at least in part caused by her mental illness. In the first place, her mental illness caused severe depression which, in turn, led her to use alcohol as a means of overcoming the depression. In the second place, her mental illness surely lessened her ability to overcome her attraction for or tendency to the use of alcohol as compared to the typical alcoholic who does not suffer from an independent or other mental illness, such as schizophrenia. The habitual intemperance of Art. 138 must be the fault of the spouse and this record does not support a conclusion that defendant's excessive drinking was her fault. Thus, we readily conclude that the trial judge was correct in dismissing plaintiff's petition but we do not agree with his conclusion with respect to defendant's reconventional demand for a separation based upon abandonment by plaintiff.
Plaintiff filed his suit in December, 1977, while defendant was in the hospital for the third time. After her discharge he insisted that she leave home and take up residence in an apartment he had found for her or he would leave home himself. Because of their children who would be better off at home and in the custody of their father, defendant left the matrimonial domicile. The trial judge concluded that plaintiff's loss of his suit against defendant, based on habitual intemperance, required him to conclude that plaintiff's action was "without a lawful cause" so as to entitle defendant to a judgment based on abandonment under C.C. Art. 143. As the trial judge put it, during the course of the trial:
"If Mrs. Anderson is culpable for her drinking, then Mr. Anderson had every right to put her out of the house. That would not be abandonment. Okay.

*797 If she is not culpable, he is guilty of abandonment. If herif she is an alcoholic and it is an illness to cause her habitual intemperance, he is bound to reside with her."
This statement is contrary to the law as found in Bergeron v. Bergeron, 372 So.2d 731 (La.App. 4th Cir. 1979), Courville v. Courville, 363 So.2d 954, Sikes v. Sikes, 321 So.2d 805 (La.App. 4th Cir. 1975). Simply because plaintiff did not prove his case for a separation based on the fault of defendant, did not relieve defendant in her reconventional demand from proving that his compelling her to leave the matrimonial domicile was "without a lawful cause." From the recitation of the facts already provided, it is clear that plaintiff had lawful cause for separating from his wife and she is not entitled to a judgment of separation against him for abandonment.
In his judgment the trial judge included a specific decree "finding Mrs. Anderson free of fault." we regard this inclusion in the judgment as somewhat curious in that this is not a claim for post-divorce alimony in which a finding of freedom from fault would be relevant and Art. 143 does not involve a finding of freedom from fault, per se. The proper inquiry with respect to fault on the reconventional demand was whether plaintiff's action was "without a lawful cause," a matter which we have already discussed. Thus, we have concluded that the portion of the judgment "finding defendant free of fault" was unresponsive to the pleadings and not properly included in the judgment.
Accordingly, the judgment on the main demand, dismissing the suit of plaintiff, Robert D. Anderson, is affirmed. That portion of the judgment in favor of Mrs. Alma Anderson decreeing a separation from bed and board and finding Mrs. Anderson free of fault is reversed and set aside, and there is judgment in favor of Robert D. Anderson as defendant in reconvention, dismissing the reconventional demand of Mrs. Alma Anderson as plaintiff in reconvention. In all other respects, the judgment appealed from is affirmed.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.