384 So.2d 823 (1980)
Diane McShea MAHMUD, Wife of Mahmud S. Mahmud
v.
Mahmud S. MAHMUD.
No. 11039.
Court of Appeal of Louisiana, Fourth Circuit.
May 13, 1980.
Rehearing Denied July 3, 1980.
*824 William J. O'Hara, III, Susan Adams, Law Student, New Orleans, for plaintiffappellant.
Girard J. Fernandez, New Orleans, for defendant-appellee.
Before GULOTTA, SCHOTT and CHEHARDY, JJ.
GULOTTA, Judge.
Diane McShea Mahmud appeals from the judgment dismissing her suit for separation from bed and board based on grounds of cruelty and from the granting of a judgment of separation in favor of her husband, in reconvention, based on grounds of abandonment. The evidence supports the dismissal of the wife's claim based on cruelty; however, it does not support the proof required for a judgment against the wife based on the husband's claim of abandonment.

DISMISSAL OF SEPARATION BASED ON CRUELTY
It is clear from a reading of the record that there exist irreconcilable differences between the parties created, to a large extent, by the different cultural backgrounds of the wife, a native of the United States, and the husband, a native of Tripoli, Libya.
The plaintiff-wife's assertions (that her husband pursued a course of mental harassment and cruelty, including unprovoked outbursts of violent temper; absolute noncommunication for no apparent reason; absence of all conjugal relations for a period of six months prior to the separation, caused by the husband; that the husband failed to adequately contribute to absolute essentials, although financially able to do so; that humiliation resulting from defendant's cold and indifferent attitude reduced plaintiff to the status of a maid) simply have not been proven by her.
Despite the wife's complaint of sparsity of furniture and of the husband's unreasonable frugality, it is uncontradicted that $200 per month from the wife's earnings was contributed to the support of her mother. Undisputed also is the fact that $7,000 was contributed by defendant toward the purchase of a house for plaintiff's mother. Defendant was earning approximately $50,000 per year and apparently the wife's earnings approximated $8,000 per year. She testified that of that amount, $200 monthly was sent to her mother and the balance was spent on clothes, cigarettes and movies for the child. The husband's earnings were used to maintain the $76,000 home purchased by the parties.
The Mahmuds separated on May 25, 1978, when plaintiff left the family home. Her suit for separation was filed on May 26, 1978. Mrs. Mahmud testified that for reasons unclear in the record, in November 1977 she left her husband's bedroom and moved into another room in the house, and has not slept with him from that date until the present, despite his request to return. Although she stated that lack of communication existed between them, it is apparent that different religious beliefs relating to holiday celebrations and expenditure of money for house furnishings, and other different religious and cultural beliefs, were the strongest facts contributing to the marital discord. She failed to specify any particular dates of unprovoked outbursts of violence on the part of her husband. Her assertions in her testimony, like her allegations in the petition, are general in nature.
Although one of her strongest complaints was that her husband failed to celebrate Christmas, she did acknowledge that on one of the Christmas holidays when they were together, he purchased bikes for her and *825 the child, and they enjoyed a Christmas dinner with his brother and family at the family home. In connection with the allegations of alleged cruel treatment, as occurs in most marital cases, the husband denied assertions that he was cruel to his wife or exhibited unprovoked bursts of violent temper. While acknowledging that he was not sympathetic toward the purchase of Christmas presents for others for this religious holiday, he could not understand how his wife could expect him to recognize her holidays and she not recognize his. He also complained of the lack of communication but explained that monetary and furniture problems become irrelevant when there exists no "conjugal relationship" and there is disharmony in the home. Considering the testimony of the parties relative to the husband's alleged cruel treatment, we agree with the trial judge that there exists insufficient evidence to support the granting of a separation from bed and board in favor of the wife, on the grounds of cruelty.

PROOF OF ABANDONMENT
The comparatively recent case of Bergeron v. Bergeron, 372 So.2d 731 (La. App. 4th Cir. 1979), a case similar to the instant one, stated that the essential elements of proof of abandonment under LSA-C.C. article 143 require a showing of (1) withdrawal from the common dwelling, (2) absence of lawful cause for withdrawal, and (3) refusal of the spouse who withdrew to return to live with the other. We pointed out further in that opinion that this problem typically arises when one spouse sues for separation based on fault and a reconventional demand is filed based on abandonment. As we stated in Bergeron, the spouse initiating the suit based on cruelty does not automatically lose the reconventional demand if that spouse cannot produce sufficient proof of cruel treatment. The party seeking a separation based on abandonment has the burden of proof, either in the original demand or on the demand in reconvention, of the three requirements as set forth in LSA-C.C. article 143. See Bergeron v. Bergeron, supra. See also Anderson v. Anderson, 379 So.2d 795 (La. App. 4th Cir. 1979) to the same effect.
In our case it is clear that the wife withdrew from the family home on May 25, 1978. It is also clear that the husband established, by a preponderance of the evidence, that the wife's constant refusal to return to the common dwelling established that her decision to leave was permanent. In this connection, the husband testified that her leaving on May 25th was followed by the filing of her separation suit on May 26th, the following day. When he arrived home on the evening of the 25th the wife had left, and he found a message which read, "We are leaving for good. Good-bye." According to Mahmud, he didn't know where his wife had gone, but he recalled that this was not the first time she had abandoned the family dwelling and left similar notes. He stated that on another occasion his wife had left him and remained away from 1974 to 1977.
Mrs. Mahmud admitted that between the time of her marriage in 1970 until she left the matrimonial domicile on May 25, 1978, she had voluntarily lived away from the home of her husband more than "half the time". Acknowledging the existence of problems, she stated on the occasions that she left she went home to live with her mother. According to Mrs. Mahmud, on May 25, 1978 she did not leave the family home voluntarily but was forced to leave because she did not want to live with anyone who did not love her.
It is apparent that the marital discord resulted in separations between the parties for extended periods of time. It is apparent also that from the marital history of the parties, they resumed living together following these separations. However, the deep-rooted irreconcilable differences were such that living together became intolerable for both parties. Under these circumstances, we cannot conclude that a party who leaves or withdraws from the matrimonial domicile is without lawful cause.
*826 Although we have concluded that Mrs. Mahmud failed to establish grounds for separation based on cruelty, we conclude also the husband failed to establish that the wife's leaving of the matrimonial domicile was without "lawful cause." Having so concluded, we reverse that part of the judgment which grants a separation to the husband based on the wife's abandonment.
Accordingly, that part of the judgment which dismisses the wife's claim for a separation from bed and board, based on the husband's cruelty, is affirmed. That part of the judgment which grants a separation in favor of the husband, and against the wife, on the grounds of abandonment, is reversed and set aside. Costs are to be divided equally between the parties.
AFFIRMED IN PART AND REVERSED IN PART.