543 So.2d 590 (1989)
Denise PRATTINI
v.
Frank G. PRATTINI, Sr.
No. 88-CA-1065.
Court of Appeal of Louisiana, Fourth Circuit.
April 27, 1989.
*591 Glen Patrick McGrath, Lawrence J. McGrath, II, New Orleans, for plaintiff.
D. Douglas Howard, Jr., Leslie A. Bonin, New Orleans, for defendant.
Before SCHOTT, C.J., and ARMSTRONG and PLOTKIN, JJ.
ARMSTRONG, Judge.
Plaintiff, Denise Prattini, appeals from a judgment of the trial court granting a separation from bed and board in favor of defendant, Frank G. Prattini.
Mrs. Prattini originally instituted this action seeking a separation based upon Mr. Prattini's cruel treatment and constructive abandonment of her. Defendant reconvened seeking a separation based upon plaintiff's cruel treatment and adandonment of him. Following trial on the merits the court dismissed plaintiff's petition and granted a judgment of separation from bed and board in favor of defendant based on plaintiff's abandonment. The trial court also granted defendant's petition for divorce based upon the couple's living separate and apart for one year.
The record reflects that the parties were married in 1977. They physically separated in 1983, four weeks after which they resumed living together. On January 31, 1986, plaintiff moved out of the marital abode, never to return. The day before, January 30, 1986, she filed her petition for separation.
At trial, both parties testified that during the marriage they drank to excess, argued, and on occasion physically fought. Mrs. Prattini had physical and mental problems during the marriage. She had a hysterectomy in 1982, knee surgery in 1983, and back surgery in 1984. She also had incontinence problems with her urinary and bowel functions. Her physical problems greatly contributed to the development of severe depression. Mrs. Prattini testified that her husband did not provide moral support during her illnesses. They argued over the management of money, the cooking, cleaning, and grocery shopping. They argued over his giving money to the church. Mrs. Prattini claimed that she and defendant didn't have a sex life because he wasn't interested in sex. She claimed that, on one occasion in 1984, he badly beat her, leaving her bruised.
On cross-examination, Mrs. Prattini admitted participating in the arguments and to possibly starting "an argument." She admitted abusing alcohol but claimed she did so in order to cope. She confirmed that the alcohol abuse caused her to have problems with her bodily excretory functions. She admitted hitting her husband but claimed it was to defend herself. She stated that, two to three weeks before she moved out of the marital abode, she put a deposit on an apartment, planning to move out. She moved before she had planned to, however, after defendant "came home and told me to get out."
Mr. Prattini testified that he never beat up his wife. He denied striking her in 1984 but admitted that on that particular occasion he pushed her onto a sofa. He said he did so to defend himself because she was *592 beating on him. He said she physically attacked him several times during the marriage. He feared his wife and testified that on some nights after their arguments he was afraid to go to sleep for fear of what she might do to him while he slept. Mr. Prattini recalled that once, in an attempt to get away from his wife and stop arguing, he locked himself in a bedroom. Plaintiff kicked in the door. He retreated to a second, then a third bedroom, but she kicked in each of those doors also. Mr. Prattini admitted that there had been a lot of "boozing and drinking" during the marriage.
Mr. Prattini claimed to have been supportive of the marriage. He paid the medical expenses for his wife which she submitted to him, and paid the bills of the marriage. He said he never denied his wife sex but was cooled off by her caustic remarks about his appeal to her. After he began practicing his religion again, his wife began nagging him about the amount of money he gave to the church. He admitted to changing the locks on the doors of the marital abode after his wife moved out, but said he did so only after coming home and finding that furnishings had been removed.
Dr. James Brown, a psychiatrist, testified that Mrs. Prattini had been his patient from November 19, 1985, to sometime in February, 1986. He first saw her while she was a patient at Southern Baptist Hospital. He saw her daily while she was in Baptist, and upon her discharge, saw her approximately twice a week until February, 1986, when she was admitted to a local psychiatric hospital. Dr. Brown found the plaintiff to be severely depressed due in large part to a history of urinary and bowel incontinence dating to 1984. She became increasingly depressed during the time he saw her until she was really "becoming non-functional." One factor related by plaintiff as affecting her depression was "a very unhappy marriage." She also related to him that she and her husband drank excessively.
Based on this evidence, the trial court found that the Prattinis argued, and on occasion physically fought. But it found the testimony conflicting as to which party provoked or instigated the physical confrontations. Therefore, the court found no cruel treatment, or fault, on the part of either party. It found that one serious incident occurred in 1984, but that it was too remote in time to constitute cruel treatment as a ground for separation.
The court found no constructive abandonment of plaintiff by defendant because it found no evidence that the plaintiff attempted to return to the matrimonial domicile or that she was barred from the home. The court went on to find that Mrs. Prattini abandoned Mr. Prattini without lawful cause. The court further found that the January 30, 1986, lawsuit, actually filed before she abandoned him, amounted to a constant refusal to return.
On appeal, Mrs. Prattini first claims that the trial court erred in finding that she abandoned the defendant without lawful cause and constantly refused to return. A separation based upon the abandonment of one spouse by the other may be granted where one spouse withdraws himself or herself from the marital abode without having lawful cause to do so, and thereafter constantly refuses to return. La.C.C. art. 143; Bergeron v. Bergeron, 372 So.2d 731 (La.App. 4th Cir.1979).
We find no fault with the trial court's factual findings but feel the trial court erred as a matter of law. In its reasons for judgment, the trial court stated "[m]ere friction and dissatisfaction or incompatibility however intense are not lawful enough to constitute cause." This is in conflict with the statement of the law in this circuit. There is a split of authority among several Louisiana circuit courts of appeal as to whether "lawful cause" necessary to justify one spouse leaving the matrimonial domicile is the equivalent of lawful grounds for a separation under La.C.C. art. 138. The First, Second, and Third circuits follow the rule that when the exit from the common dwelling is based upon disagreements and misconduct, that exit is not for "lawful cause" under La.C.C. art. 143 because it would not amount to lawful grounds for a separation under La.C.C. art. *593 138. See Durand v. Willis, 470 So.2d 947 (La.App. 3rd Cir.) writ denied 477 So.2d 98 (La.1985); Dugas v. Dugas, 424 So.2d 1189 (La.App. 1st Cir.1982); Quinn v. Quinn, 412 So.2d 649 (La.App. 2d Cir.), writs denied, 415 So.2d 941 and 415 So.2d 945 (La. 1982).
In contrast to that view this court has held that the "lawful cause" necessary to justify a spouse's leaving the matrimonial domicile is not the equivalent of lawful grounds for separation from bed and board under La.C.C. art. 138. Sykes v. Sykes, 321 So.2d 805 (La.App. 4th Cir.1975). In Sykes we stated:
"Lawful cause" necessary to justify a spouse's leaving the matrimonial domicile is not the equivalent of lawful grounds for a separation from bed and board under C.C. art. 138. When spouses are incompatible and come to this realization after sufficient reflection and reasonable attempts to resolve their differences, the law does not require them to continue living together until one or the other finally gathers sufficient evidence to prove one of the grounds listed in C.C. art. 138. If neither spouse has grounds for legal separation, they can agree to live separately until the passage of time required for obtaining a separation on the grounds of living apart, and the party leaving the matrimonial domicile is not automatically guilty of abandoning the spouse who remains.
"Furthermore, this agreement to live separately may be express or may be implied from the action of the parties. A wife, for example, cannot implore her husband to continue living together on terms dictated by her and then claim abandonment when he declines to do so except on other terms. Since a successful marriage involves giving and taking, each spouse must do both, and when each declines to give, each will be deemed to have agreed to live separately."
Intense friction, marital dissatisfaction, and incompatibility may constitute "lawful cause" for a spouse to leave the marital abode. It is apparent from the record that Mr. and Mrs. Prattini had a volatile relationship. They had violent and bitter arguments and on occasion exchanged blows. According to Mrs. Prattini, the arguing was constant. Their relationship had long been on the rocks when Mrs. Prattini left on January 31, 1986. We do not condone one spouse leaving the common dwelling because of everyday arguments and disagreements but such is not the case here. Under the circumstances of this case, we find that the trial court erred as a matter of law when it held that Mrs. Prattini did not have lawful cause to leave the common dwelling. Under the established jurisprudence of this circuit, Mrs. Prattini had lawful cause.
Plaintiff also claims that the trial court erred in not finding that the defendant constructively abandoned her. Constructive abandonment requires that one spouse bar the other from entering the marital abode without lawful cause. Schirrmann v. Schirrmann, 436 So.2d 1340 (La.App. 5th Cir.) writ denied 440 So.2d 761 and 440 So.2d 764 (La.1983). Abandonment requires that the abandoning spouse constantly refuse to return to the marital abode. Likewise, constructive abandonment should logically require that the abandoning spouse constantly refuse to re-admit the other spouse.
In the instant case, we have found that Mrs. Prattini had lawful cause for abandoning the marital abode. This finding was based upon the extreme level of marital discord, dissatisfaction, and incompability between the parties. It was implied that the parties simply wished to live separate and apart. Therefore, it should follow that Mr. Prattini had lawful cause for constructively abandoning his wife. Even if not, there is no evidence, as correctly stated by the trial court, that Mr. Prattini constantly refused to re-admit Mrs. Prattini after allegedly ordering her out of the home. Mrs. Prattini admitted that she never attempted to return to live with Mr. Prattini. The trial court correctly found that Mr. Prattini had not constructively abandoned his wife.
Plaintiff also claims that the trial court erred by not finding Mr. Prattini at *594 fault based upon his cruel treatment of Mrs. Prattini. The trial court found that the one instance of physical abuse in 1984, where, according to plaintiff, her husband struck her, was too remote in time to be considered as cruel treatment in 1986. The trial court was correct as to this incident. Cohabitation following physical abuse may be construed as a reconciliation, Gilberti v. Gilberti, 338 So.2d 971 (La.App. 4th Cir. 1970), espcially when it involves a single act. See Barnes v. Barnes, 207 So.2d 895 (La.App. 1st Cir.1968). As to the rest of the arguing and fighting, both parties were responsible. The testimony of the parties was contradictory as to whether Mr. Prattini provided moral support to his wife during her illnesses, both physical and mental. The arguing and fighting obviously continued, but again, the evidence does not establish that this was the fault of either party alone. The trial court stated that the testimony was "controverted as to which party provoked or instigated the physical confrontations, therefore the court finds that there is no cruel treatment on either part of the parties." We do not agree with the trial court's reasoning but agree with the result.
Cruel treatment, under La.C.C. art. 138, must rise to the level of rendering the spouses living together insupportable. Von Bechman v. Von Bechman, 386 So.2d 910 (La.1980). The testimony of Mrs. Prattini, much of it contradicted by her husband's testimony, did not establish that his actions rendered their living together insupportable. Accordingly, the trial court was correct in finding no cruel treatment such as would justify a separation from bed and board based upon Mr. Prattini's fault. The court also found no such cruel treatment on the part of Mrs. Prattini. Mr. Prattini neither appealed this or any other finding by the trial court, nor did he answer plaintiff's appeal. Therefore, we need not review that finding.
For the foregoing reasons, we affirm that part of the judgment of the trial court, (1) granting defendant a divorce based upon Mr. and Mrs. Prattini living separate and apart for one year, (2) dismissing Mrs. Prattini's petition for separation based upon her husband's cruel treatment and abandonment, and (3) dismissing Mr. Prattini's petition for separation based upon plaintiff's cruel treatment. We reverse that part of the judgment of the trial court granting Mr. Prattini a separation from bed and board based upon plaintiff's abandonment.
AFFIRMED IN PART AND REVERSED IN PART.