|.BROWN, C.J.
This case involves a dispute over fees incurred for architectural services relating to three projects. The architect, S.J. Tu-minello, was contacted by Lev and Anne Dawson regarding the design and construction of a residence for defendants (“the Lev Dawson residence”), a residence for defendants’ son (“the Seth Dawson residence”), and a charter school in Delhi, LA (“the charter school”). Tuminello created the plans and oversaw construction of the Lev Dawson residence, as well as submitted preliminary drawings for the Seth Dawson home and the Delhi Charter School. In August 2001, the Dawsons terminated Tuminello’s services on all three projects.
Tuminello brought an action claiming nonpayment for architectural services. The Dawsons responded by filing an answer and reconventional demand. In its *323 final amended form, the Dawsons’ recon-ventional demand sought damages for additional expenditures to correct construction errors on the Lev Dawson residence, as well as recovery of overpayment for architectural services relating to all three projects.

1) The Lev Daiuson Residence

The trial court determined that Tumi-nello was responsible for the construction errors in the Lev Dawson residence and found that the Dawsons spent $94,050 to correct these errors; however, it only awarded the Dawsons $73,000, the amount claimed in their reconventional demand. The court further determined that Tumi-nello was due $27,720 for additional architectural services not covered by the contract. After calculating the amount due to the Dawsons for the correction of the errors, the amount Lowed to Tuminello for additional architectural services, and the amount already paid by the Dawsons, the court determined that the Dawsons overpaid Tuminello for the Lev Dawson residence by $36,438.30. After adding interest and attorney’s fees as provided for in the parties’ contract, the court awarded the Dawsons $67,410.85.

2) The Seth Dawson Residence and Charter School

The trial court determined that Tumi-nello was due the full amount of the invoices submitted for architectural services performed on the Seth Dawson residence and the charter school. Thus, the court awarded Tuminello $65,265.31.[1]
After offsetting the awards, the trial court determined that the Dawsons were owed $2,145.54. The Dawsons now appeal this judgment. We amend and as amended, affirm.

Facts

1) The Lev Dawson Residence

On February 28, 2000, a written contract for architectural services relating to the Lev Dawson residence was executed between S.J. Tuminello, Architect and Associates, Inc., and Lev and Anne Dawson. The contract called for preliminary drawings at a rate of $85 per hour to be billed monthly. The contract provided that Tu-minello would create and submit ^preliminary drawings for the residence to be reviewed by the Dawsons, who would then be given the option of whether to proceed, and if so, whether to pay an hourly fee, a flat fee, or a percentage of the construction cost. The contract stated that if either party was forced to obtain legal counsel for the enforcement of the terms and conditions of the contract, the losing party to the litigation would be responsible for reasonable attorney’s fees, all court costs, and interest at a rate of 1)6% per month on any unpaid balance.
After reviewing preliminary drawings submitted by Tuminello, the Dawsons elected to proceed and entered into a contract on April 24, 2000, for further architectural services at 8% of the cost of construction. Under this agreement, Tu-minello agreed to prepare working drawings, interior design, finish schedules, and construction administration for the resi *324 dence and for “all outbuildings or other structures as the owner may require.” (Emphasis added). Tuminello also agreed to prepare a typical electrical layout.
When Tuminello finished the working drawings for the residence, the Dawsons requested three changes. Specifically, they wanted a step down into the living room reduced from two steps to one step, modifications of a bay window, and alterations to a closet. These changes, however, were not followed in the actual construction. After considering their options, the Dawsons decided that the errors would have to be corrected. The trial court determined that the cost to make the corrections was $94,050.

\$) The Seth Dawson Residence

On October 13, 2000, the Dawsons entered into a second written contract with S.J. Tuminello, Architect and Associates, Inc., to obtain architectural services for the Seth Dawson residence. The terms and conditions of this contract were the same as those of the February 28, 2000, contract for the Lev Dawson residence.
Tuminello prepared and presented drawings for a “Louisiana style” house and submitted the corresponding invoice for $4,250 (50 hours at $85/hour), which the Dawsons paid. Seth and Eva Dawson (the Dawsons’ son and daughter-in-law) rejected the preliminary drawings for the “Louisiana style” house. After meeting with Seth and Eva to determine what type of home they desired, Tuminello began preparing preliminary drawings for a “Spanish style” home. After Lev Dawson terminated Tuminello’s services, the architect submitted an invoice for 183 hours billed for the preliminary drawings, 128 of which were performed in July 2001, one month before Tuminello was dismissed.

3) The Charter School

The third project involves an oral contract between Lev Dawson and S.J. Tumi-nello, Architect and Associates, Inc., for architectural services regarding the charter school. The parties agree that Tumi-nello was to be paid $85 per hour for his services. Tuminello charged Dawson for 1,015 hours of work on the charter school, totaling $86,275. Dawson paid $45,900 of this, leaving an unpaid balance of $40,375.
I sAppellants’ Assignments of Error
The Dawsons specify four errors by the trial court. The first is that Tuminello should not have been awarded $27,720 for additional architectural services on the Lev Dawson residence as this work was covered by the contract. Second, the Dawsons contend that the trial court erred in limiting their award for the correction of construction errors on the Lev Dawson residence to $73,000 when it was determined that the actual cost of correction was $94,050. The third and fourth errors were that the hours billed by Tuminello for services rendered in connection with the Seth Dawson residence and the charter school were excessive, unreasonable, and uncorroborated. Plaintiff, S.J. Tuminello, did not appeal or submit a brief.

Discussion

The Lev Dawson Residence

The trial court found that Tumi-nello was due $27,720 for additional architectural services not included in the 8% cost of construction fee for the Lev Dawson residence. Of this amount, $22,875 was for the preliminary drawings for the Lev Dawson residence pursuant to the contract dated February 28, 2000. Also included in the award was $2,550 for work done on a gazebo and $2,295 for work done on a bridge. We agree with the trial court’s determination that the percentage fee was for work subsequent to the prelim *325 inary drawings; thus, Tuminello was entitled to $22,875 for his services in creating the preliminary drawings in addition to the percentage of construction cost fee for his subsequent services. Thus, the question is | ^whether the work associated with the gazebo and bridge is to be paid based on a percentage of their construction cost or by the hour.
The 8% of cost contract entered into by the Dawsons and Tuminello clearly states what work will be performed by the architect. Tuminello agreed to provide all working drawings, interior design, finish schedules, construction administration, and a typical electrical layout not only for the residence, but also for all outbuildings or other structures as the owner may require.[2]
A gazebo and a bridge are typical examples of outbuildings or structures that an owner may request. As such, the architectural services associated with their design and construction are clearly covered by the 8% of cost fee. The record provides no evidence to support a conclusion that these services were to be paid at $85 per hour; thus, the trial court judgment awarding Tuminello $4,845 for architectural services related to the bridge and gazebo must be reversed. Otherwise, Tuminello would be paid twice for this work inasmuch as he received 8% of the cost to construct these features.
Also, the trial court determined that Tuminello was responsible for the expenses incurred in correcting the construction errors. The trial court determined that the Dawsons actually incurred additional expenses of [ 7$94,050 to remedy these errors. Thus, the Dawsons argue that the trial court erred in limiting their award to $73,000.
La. C.C.P. art. 1154 provides:
When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised by the pleading. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure to so amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby, and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense on the merits. The court may grant a continuance to enable the objecting party to meet such evidence.
In their amended reconventional demand the Dawsons stated that Tuminello “failed to provided architectural services in a workman manner and on a timely basis” which caused them to expend $73,000 to correct and concluded that they were entitled to “such damages as are reasonable in the premises.” Tuminello did not object to the testimony and exhibits showing that *326 the Dawsons actually spent $94,050 to correct the construction errors. Tuminello was aware of these costs prior to trial and did not nor could he claim surprise. Under these circumstances C.C.P. art. 1154 would allow such an amendment to the pleadings. See Stevens v. Winn-Dixie Of Louisiana, 95-0435 (La.App. 1st Cir.11/09/95), 664 So.2d 1207.
So long as the facts constituting the claim or defense are alleged or proved, the party may be granted any relief to which he is entitled to under |sthe evidence. La. C.C.P. art. 861; Guin v. Guin, 378 So.2d 1022 (La.App. 2d Cir.1979). Thus, we find the trial court erred in not awarding the full cost of $94,050.

tí Seth Dawson Residence and Charter School

The Dawsons’ third and fourth assigned errors are largely based on the same argument and thus, will be discussed together. The Dawsons contend that Tu-minello’s invoices for work performed on the charter school and the Seth Dawson residence were excessive, uncorroborated, and unreasonable. They contend that the trial court erred in awarding Tuminello the full amount of the invoices for each of these projects.
The Dawsons assert that Tuminello’s invoices and log books provided no description of the work performed but only stated an amount of time allegedly expended on these two projects. The Dawsons argue that Tuminello’s recovery should be limited under the principle of quantum meruit, and further, that Tuminello failed to meet his burden of proof that he was entitled to the amounts sought.[3]
The present case involves a contract to render services in which there has been a meeting of the parties’ minds as to the compensation due. Specifically, the Daw-sons and Tuminello entered into an agreement for | garchitectural services to be performed on the charter school and Seth Dawson residence at a fee of $85 per hour.
The trial court determined that, while another architect might have done the work in less time, the evidence does not support a finding that the expended time claimed by Tuminello was excessive or unreasonable. The Dawsons’ expert, Carl Michael Wallace, a civil engineer, testified that he could have performed the same work in less time. Even so, Wallace conceded that the amount of time claimed by Tuminello was not unreasonable. The trial court stated that “Mr. Dawson sought to hire an architect who rendered original thoughts and drawings. The court cannot, from the evidence introduced, speculate that some other source could have provided the same or similar work for less hours.” The record is filled with exhibits demonstrating the work performed by the architect and his associates. These exhibits corroborate Tuminello’s testimony and time sheets. We cannot say that the trial court’s findings were manifestly erroneous or clearly wrong for either the Seth Dawson residence and the charter school.

*327
Interest and Attorney Fees

The written contracts for the Lev Dawson and Seth Dawson residences provided that if either party was forced to obtain legal counsel to enforce the terms and conditions of the contracts, the losing party to the litigation would pay attorney fees and interest. In this case, both Tumi-nello and Dawson were forced to litigate and both were successful in part and | munsuccessful in part. The trial court awarded both parties attorney fees and interest. We reverse these awards as both parties, in part, lost.

Conclusion

The trial court determined that Tumi-nello was owed a total of $181,584.20 for architectural services rendered on the Lev Dawson residence. From this we subtract the $4,845 improperly awarded for additional architectural services reaching a total of $176,739.20 for Tuminello’s architectural services relating to the Lev Dawson residence. From this, the $94,050 awarded to the Dawsons in reconvention is subtracted, leaving $82,689.20 owed to Tumi-nello by the Dawsons. The Dawsons had already paid $145,022.50 to Tuminello for work on the residence and thus, are owed $62,333.30. Finding no error in the trial court’s rulings on the amount of architectural fees owed by the Dawsons to Tumi-nello for the Seth Dawson residence and the charter school, we subtract the trial court’s award to Tuminello in these matters from the amended amount awarded to the Dawsons regarding the Lev Dawson residence. The trial court improperly awarded contractual interest and attorney fees as both parties were in part unsuccessful in their claims. Thus, we determine that Tuminello owes the Dawsons $6,408.30.
IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the judgment be amended as follows:
Plaintiffs in reconvention, Lev and Anne Dawson, are awarded $6,408.30 with legal interest from date of judicial demand. Costs are to be paid by both parties in equal proportion.
AMENDED AND AS AMENDED, AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, STEWART, GASKINS, CARAWAY, and DREW, JJ.
Rehearing denied.

. The trial court awarded $15,550 for 183 hours billed at $85 per hour on the Seth Dawson residence. After adding $7,466.56 for interest (1)4% for 32 months) and $1,868.75 for attorney fees (14.95 hours at $125 per hour), the court awarded Tuminello $24,890.31 for architectural services rendered on the Seth Dawson residence. The court then determined that Tuminello was owed $86,275 for 1,015 hours at $85 per hour for architectural services on the Delhi Charter School. The Dawsons had already paid $45,900, so Tuminello was awarded the balance of $40,375 for his work on the Delhi Charter School. No interest or attorney fees were added to this.

. Complicating matters is that the trial court has set the cost of construction at $2,040,055.24, which is the cost of construction up to the termination of Tuminello's services. The true cost of construction for the Lev Dawson home was $5,258,385.10. A review of the invoices submitted for construction costs shows that work for the bridge and gazebo was performed and billed both before and after Tuminello's dismissal. Since Tumi-nello has not appealed or submitted a brief in this appeal, we must accept this to be the cost of construction upon which his fee is based.

. The Dawsons base this argument on the rulings in Breeden v. Cella, 02-0972 (La.App. 4th Cir. 11/26/02), 832 So.2d 1072, and Simon v. Fasig-Tipton Company, 92-173 (La.App. 3d Cir.03/22/95), 652 So.2d 1351. These cases are inapplicable.
In Breeden, the court ruled that the attorney’s time sheets were insufficient to prove his entitlement to fees in addition to those already collected. In Simon there was no meeting of the minds as to the percentage split intended to be used in determining compensation.
Further, quantum meruit is a common law concept. Principles of contract interpretation enunciated in La. Civ.Code articles are the substantive law for decisions in Louisiana. Morphy, Makofsky & Masson, Inc. v. Canal Place 2000, 538 So.2d 569 (La.1989).